IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSE LUIS YANEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 12−cv−0039−MJR−SCW |
| | ) |
| PHIL LONG, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER

REAGAN, District Judge:

A.    **Introduction**

While incarcerated at the Federal Correctional Institution in Greenville, Illinois (FCI-Greenville) in January 2012, Jose Luis Yanez (Plaintiff) filed the above-captioned suit in this Court, alleging constitutional violations related to his demotion and eventual termination from a job with UNICOR industries.  Plaintiff's pro se complaint sought monetary damages and injunctive relief pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* **403 U.S. 388 (1971)**.[1]

The complaint survived threshold review under 28 U.S.C. 1915A, via Order recognizing two claims (Count 1 alleging age and race discrimination, and Count 2

---

[1]    Whereas 42 U.S.C. 1983 imposes tort liability on *state* employees for violating federally-secured rights, *Bivens* authorizes an action for damages against *federal* officers to redress constitutional violations.  *See Belbachir v. County of McHenry,* **726 F.3d 975, 978 (7th Cir. 2013);** *Engel v. Buchan,* **710 F.3d 698, 703 (7th Cir. 2013).**  *See also Arnett v. Webster,* **658 F.3d 742, 750 n.4 (7th Cir. 2011) ("Bivens authorizes the filing of constitutional tort suits against federal officers in much the same way that 42 U.S.C. § 1983 authorizes such suits against state officers.").**

alleging retaliation) against a single defendant – Phil Long, Superintendent of Industries at FCI-Greenville.

The case is before the Court on Defendant Long's motion for summary judgment (Doc. 56), filed February 28, 2014.  On April 2, 2014, Plaintiff filed his response -- a "Memorandum of Law in Support of Affiant's Rebuttal Motion re: Motion for Summary Judgment" (Doc. 58).  As described below, the Court will grant Defendant's motion.

**B.      Applicable Legal Standards**

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe,* **743 F.3d 1101, 1105 (7th Cir. 2014),** *citing* **FED. R. CIV. P. 56(a).  *Accord Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012).**  A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Serednyj v. Beverly Healthcare, LLC,* **656 F.3d 540, 547 (7th Cir. 2011),** *citing Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 248 (1986).** *Accord Bunn v. Khoury Enterpr., Inc.,* **753 F.3d 676, 681-82 (7th Cir. 2014).**

To defeat a summary judgment motion, the nonmovant must articulate specific facts showing that a genuine fact issue exists for trial.  "A disputed issue is 'genuine' where a reasonable jury could render a verdict for the non-moving party 'if the record at trial were identical to the record compiled in the summary judgment proceeding.'" *520 South Michigan Ave. Assoc., Ltd., v. Unite Here Local 1,* **-- F.3d --, 2014 WL 3720253, *9 (7th Cir. July 29, 2014).**  Summary judgment is not appropriate when evidence in the

record indicates that "alternative inferences can be drawn." *Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004),** *cert. denied,* **546 U.S. 1032 (2005).**

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-movant. *Anderson,* **699 F.3d at 994;** *Righi v. SMC Corp.*, **632 F.3d 404, 408 (7th Cir. 2011);** *Delapaz v. Richardson,* **634 F.3d 895, 899 (7th Cir. 2011).** The district court may not resolve issues of credibility when deciding a summary judgment motion. "Those are issues for a jury at trial, not a court on summary judgment." *Williams v. City of Chicago,* **733 F.3d 749, 752 (7th Cir. 2013).**

When the party moving for summary judgment also bears the burden of proof at trial, he must show that the record contains proof essential to establishing all of the elements of his claim (or prima facie case). *Celotex Corp. v. Catrett,* **477 U.S. 317, 331 (1986) ("If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence… that would entitle it to a directed verdict if not controverted at trial").** *See also MMG Financial Corp. v. Midwest Amusements Park, LLC,* **630 F.3d 651, 656 (7th Cir. 2011);** *Montgomery v. American Airlines, Inc.,* **626 F.3d 382, 389 (7th Cir. 2010),** *citing Smith on Behalf of Smith v. Severn,* **129 F.3d 419, 425 (7th Cir. 1997).**

By contrast, when the summary judgment movant does *not* bear the burden at trial (like Defendant Long in the case at bar), he can prevail just by showing an absence of evidence to support <u>any</u> essential element of the nonmovant's case. *Modrowski v.*

*Pigatto*, **712 F.3d 1166, 1169 (7th Cir. 2013).** Bearing these standards in mind, the Court reviews the record before it.

      **C.**     **Summary of Key Facts and Allegations**

Plaintiff alleges that he has worked for UNICOR for twenty years,[2] but his Inmate Work History shows that he was not incarcerated at FCI-Greenville until April 2001 (Doc. 58-3, p. 18). Prior to the events at issue here, Plaintiff filed a grievance on September 8, 2009, based on his demotion to a Grade 2 pay grade (Doc. 58-3, pp. 31, 34).

In that grievance, Plaintiff stated that he had worked in UNICOR since September 15, 2004, and that he believed the demotion was due to his race, Hispanic (Doc. 58-3, p. 34). Plaintiff also alleged that while the demotion was purportedly due to "poor performance," he had not received a write-up before the demotion (Doc. 58-3, p. 31). While the institutional response is not in the record, it appears Plaintiff was restored to Grade 1 and given an upward adjustment of $102.83 for the months of July, August, and September 2009 (Doc. 58-3, p. 53).

Defendant Long, Superintendent of Industries (SOI) at FCI-Greenville, has submitted an affidavit (Doc. 56-1), explaining the UNICOR (or "FPI") program at FCI-Greenville. FPI positions are classified by pay grades based on the principles of pay equity, economy, and workforce resources (Doc. 56-1, p. 1) (Doc. 56-2, pp. 3-4). The SOI has the authority to classify positions (Doc. 56-1, p. 1) (Doc. 56-2, p. 2).

---

[2]     UNICOR is the commercial name of "Federal Prison Industries," a government corporation within the U.S. Bureau of Prisons tasked with providing work simulation programs and training for inmates in federal prisons. *U.S. v. Belwood*, **222 F.3d 403, 404 n.4 (7th Cir. 2000).**

Long performed an annual review of factory operations in the Fall of 2010 (Doc. 56-1, p. 1). He determined that all Utility Operator positions should be reclassified from Grade 1, which was the highest pay grade, to Grade 2 (Doc. 56-1, p. 1). Long used Form 82 to make these calculations (Doc. 56-7). Worksheets show that Long considered the general educational development, specific vocational development, physical demand, responsibility for equipment and others, and working conditions of the position when determining that it should properly be a Grade 2 job (Doc. 56-7).

Of the nine Utility Operator positions that were classified Grade 1, eight were reclassified as Grade 2 on October 2, 2010, and one was reclassified to Grade 2 on October 18, 2010, because the position was overlooked during the earlier reclassification (Doc. 56-1, p. 1). Long submitted documentation demonstrating that Travis Bean, Eric Hargrove, Lateef Hobbs, Anthony Lemay, Ricardo Long, David Phillips, Todd Turner, Joseph Wilson, and Plaintiff were all Utility Operators demoted from Grade 1 to Grade 2 during October 2010 (Doc. 56-6).

Plaintiff filed a Request for Administrative Remedy on November 12, 2010 challenging his demotion from Grade 1 to Grade 2 (Doc. 58-3, p. 47). On December 2, 2010, the unit manager responded that the demotion was pursuant to BOP policy and guidelines (Doc. 58-3, p. 47). Plaintiff appealed the decision (Doc. 58-3, p. 50).

Although the appeal is dated January 26, 2010, this appears to be a typo because the appeal references the events in October 2010 (Doc. 58-3, p. 50). Plaintiff alleged in that grievance that he was discriminated against due to age, race, and as part of a systematic method of eliminating workers with longevity (Doc. 58-3, p. 51). Plaintiff

appealed another administrative remedy request on March 15, 2011, also regarding the pay grade reassignment, although it does not appear that the original request is in the record (Doc. 58-3, pp. 40-41).

Long reorganized the factory in January 2011 (Doc. 56-1, p. 1).  As a result of that reorganization, Plaintiff was transferred from his Utility Operator position to Sewing Machine Operator trainee (Doc. 56-1, p. 1).  Plaintiff retained his Grade 2 classification, but he was laid-in due to lack of work (Doc. 56-1, p. 1).  A production line in the factory had to be shut down in late January 2011, because a customer terminated a contract with UNICOR for manufacturing work (Doc. 56-1, p. 1).

On February 15, 2011, Plaintiff (who was still laid-in from the Sewing Machine Operator trainee position) was offered his choice of three different positions with work available (Doc. 56-1, p. 1).   He chose the Trim Front position, which carried a Grade 4 pay grade (Doc. 56-1, p. 1).  Plaintiff started that position on February 24, 2011 (Doc. 56-1, p. 1).  On March 3, 2011, Plaintiff grieved his placement in the Grade 4 position by requesting an administrative remedy (Doc. 58-3, p. 39).  His counselor responded on March 29, 2011, indicating that Plaintiff was placed in a job that was available, because his previous job was discontinued and there were no open positions above Grade 4. Plaintiff was issued a BP-9 form (Doc. 58-3, p. 39).

Additional lay-offs were required in March 2011 due to lack of work.  Plaintiff was laid-in on March 28, 2011 (Doc. 56-1, p. 2).  Plaintiff refused an unidentified position during the first week of April 2011 (Doc. 56-1, p. 2).  Long terminated Plaintiff,

along with several other inmate workers, on April 8, 2011 (Doc. 56-1, p. 2).   All

remaining inmates were terminated in September 2011, due to lack of work (*id.*).

Plaintiff (who is Hispanic and now roughly 71 years old) maintains that he was

denied job opportunities that were given to younger, "mostly white inmates" (Doc. 1-1,

p. 12).  The gist of Defendant's summary judgment argument is that Plaintiff has failed

to present any evidence suggesting that he was treated less favorably than a similarly

situated white or younger inmate.  Defendant emphasizes that the record before the

Court demonstrates that all inmates with Plaintiff's same position were equally affected

by the reclassification of the job (what Plaintiff refers to as his "demotion" in the Utility

Operator position), and that Plaintiff's ultimate termination resulted entirely from a

factory-wide work shortage, not discrimination or retaliation (Doc. 56, p. 4).

### D.    Discovery and Other Preliminary Issues

Before the Court reaches the merits of Defendant's summary judgment motion,

the Court addresses several frivolous points raised in Plaintiff's response to Defendant's

summary judgment motion. [3]

Plaintiff argues that he is entitled to more discovery, and that if Defendant would

produce certain documents Plaintiff could prove his case.  It is too late for these

arguments.  Plaintiff had the obligation to prosecute his own case.  While Plaintiff did

file a motion to compel in February 2013 (Doc. 23), he has not brought any discovery

---

[3]    Plaintiff repeatedly cites statutes (e.g., admiralty, the Uniform
Commercial Code) that are wholly irrelevant to this case.  The Court will
only address Plaintiff's arguments to the extent that they raise relevant
facts and non-frivolous legal arguments.

disputes to the Court's attention since that time.  Discovery in this case closed on February 3, 2014 (Doc. 22).  Plaintiff was obligated to propound discovery to Defendant during that time and seek the Court's intervention if necessary.  Moreover, some of the documents Plaintiff is requesting, for example rosters back to 1992, would have little or no relevance to this case.

Additionally, Plaintiff maintains that his *response* to Defendant's motion counts as a separate motion for summary judgment and unless Defendants respond to it, he (Plaintiff) is entitled to summary judgment.  This is an erroneous statement and a frivolous argument.  The dispositive motion deadline in this case was March 3, 2014.  Plaintiff did not timely file a summary judgment motion and did not seek leave to file a late motion.  The Court will not construe Plaintiff's April 2, 2014 response as a motion for summary judgment.  Defendant was under no obligation to file a reply thereto.

Finally, throughout his summary judgment response, Plaintiff levels accusations at UNICOR, the Justice Department, and the U.S. Attorney General.  None of these entities is a party to this case, and Plaintiff has not stated any claim against them.  This case has proceeded only against Long.  With the issues properly focused, the Court turns to the merits of Defendant's motion for summary judgment.

E. **Analysis**

■ COUNT 1 - AGE AND RACE DISCRIMINATION

Plaintiff alleges that his pay grade was reduced due to age, race, and as a cost-saving measure to eliminate workers with longevity.  Plaintiff brought his claims pursuant to the Fourteenth Amendment of the Constitution.

It is true that prisoners "are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell,* **418 U.S. 539, 556 (1974).** But Plaintiff is a federal inmate suing a federal correctional official, and the Fourteenth Amendment governs the conduct of *state*, not federal, actors. So, in analyzing Plaintiff's claims, Defendant instead looked to the Fifth Amendment to the United States Constitution. The caselaw contains support for this approach. *See, e.g., Markham v. White,* **172 F.3d 486, 491 (7th Cir. 1999) ("When a case is brought against federal officials, the equal protection clause of the Fourteenth Amendment does not provide the theoretical basis for the claim. Instead, courts turn to the due process clause of the Fifth Amendment, which has been understood to incorporate equal protection principles….).**

The Fifth Amendment provides, *inter alia*, that no person shall be "deprived of … property, without due process of law." **U.S. CONST. amend. V.** The Fifth Amendment arguably provides a vehicle for Plaintiff's claims. "Although it contains no Equal Protection Clause as does the Fourteenth Amendment, the Fifth Amendment's Due Process Clause prohibits the Federal Government from engaging in discrimination that is so unjustifiable" as to violate due process. *Schlesinger v. Ballard,* **419 U.S. 498, 500 n.3 (1975),** *citing Bolling v. Sharpe,* **347 U.S. 497, 499 (1954) (construing the Fifth Amendment's due process clause to include an equal protection principle).** The Supreme Court has held that the implied guarantee of the Fifth Amendment's equal protection requirement prohibits government actors from applying different standards to similarly situated individuals. *See, e.g., City of Cleburne v. Cleburne Living Center,*

**473 U.S. 432 (1985).**   Additionally, the Supreme Court has held that equal protection rights extend to prisoners.  *Cruz v. Beto*, **405 U.S. 319, 321 (1972)**.

More particularly to the allegations in the case at bar (i.e., discrimination in Plaintiff's prison job), the United States Court of Appeals for the Seventh Circuit has held that prison officials cannot discriminate against an inmate by making a job assignment on the basis of race.  *Black v. Lane*, **824 F.2d 561, 562 (7th Cir. 1987) (racial discrimination in assignment of prison jobs against African-American inmate stated a cause of action)**.  While not addressed in the Seventh Circuit, other courts have held that age discrimination is also cognizable under the Fifth Amendment, and the undersigned will proceed under that assumption here.  *See, e.g., Williams v. Meese*, **926 F.2d 994, 998 (10th Cir. 1991)**.

Under either the Fifth or the Fourteenth Amendment, the constitutional guarantee of equal protection prohibits government actors from applying different standards to similarly situated individuals.  *See, e.g., City of Cleburne*, **473 U.S. at 439 (the equal protection clause of Fourteenth Amendment commands that no state shall deny any person the equal protection of the laws, which essentially directs that all similarly situated persons shall be treated alike);  *United States v. Brucker*, 646 F.3d 1012, 1016-17 (7th Cir. 2011) (the Fifth Amendment contains an equal protection component, and for claims "based on either the Fifth or Fourteenth Amendment, 'equal protection of the laws means that all persons similarly situated should be treated alike.'").**

To prove race discrimination under a theory of equal protection, a plaintiff must produce evidence showing that, as a member of a protected class, he was treated differently than similarly situated individuals outside of the protected class, and that the defendant acted with a discriminatory purpose or intent. *Hill v. Thalacker*, **399 F. Supp. 2d 925, 928-29 (W.D. Wis. 2005)[4]**, *citing Minority Police Officers Ass'n v. South Bend*, **801 F.2d 964, 966 (7th Cir. 1986)**. While unequal application of a prison policy may demonstrate discriminatory intent, "conclusory assertions of racism are insufficient." *Id*. **at 930,** *citing Minority Police Officers*, **801 F.2d at 967 (discriminatory purpose required for equal protection claim "may be established by proof of the systematic exclusion of persons because of race or the unequal application of a … policy"), and** *Mason v. Continental Illinois Nat. Bank,* **704 F.2d 361, 367 (7th Cir. 1983) (record contained no evidence that racial animus played any role in denial of promotion, and plaintiff's mere conclusory allegations of discrimination were not enough to withstand summary judgment).**

---

[4]    The district court's grant of summary judgment for defendant in *Hill*, a case brought by a federal prison inmate under *Bivens* claiming race discrimination in a promotion denial, was affirmed by the Seventh Circuit in an unpublished opinion, *Hill v. Thalacker,* **210 Fed. Appx. 513 (7th Cir. 2006).**  That opinion questions whether a federal inmate can assert a race discrimination claim under the Fifth Amendment, since generally § 717 of Title VII (**42 U.S.C. 2000e-16**) provides the exclusive judicial remedy for discrimination claims in federal employment. *See also Mlynczak v. Bodman,* **442 F.3d 1050, 1056-57 (7th Cir. 1006).**  The *Hill* Court added, though, that whether the inmate's claim was analyzed under Title VII or equal protection principles, his claim of racial discrimination could not survive summary judgment, "because he presented no evidence that similarly situated white employees received more favorable treatment than he did."  *Id.,* **210 Fed. Appx. at 515-16.**  The latter conclusion is equally true in the case at bar.

Here, Plaintiff has done little more than make conclusory allegations of race and age discrimination. He has not offered any proof of discrimination. Although Plaintiff has submitted some UNICOR roster sheets from 2009 with notes on them, the roster sheets do not identify inmates by race or age. He has not submitted the names of any Caucasian workers who were treated differently than he. Specifically, Plaintiff has not identified any Caucasian Utility Operators who was *not* demoted to Grade 2 as a result of the reclassification. Plaintiff argues that some positions in the factory were the equivalent of the Utility Operator position and that those positions were not demoted. But he has not tendered any job descriptions showing that the positions were functionally similar, that those positions were not reclassified, or that Caucasian inmates even held such positions. In short, Plaintiff has not submitted any evidence that any Caucasian UNICOR worker was treated differently (more favorably) than he.

Furthermore, Defendant Long has articulated a non-discriminatory reason for the "demotion" -- to reclassify certain positions in accordance with prison and UNICOR principles. He has submitted a series of worksheets that reveal the calculations and factors considered when assigning the positions. And it is not disputed that Long had the authority to reclassify the positions. There is nothing improper about the factors he considered or the exercise of his authority.

Plaintiff claims that Long acted pursuant to a policy of laying off workers with longevity, but Plaintiff presents no evidence of such a policy. Even if he had, longevity

is not a protected class under the Constitution.  Plaintiff has not alleged that Long

created the policy, and Long cannot be held liable for following institutional policy.[5]

As to Plaintiff's claim of age discrimination, it is significant that Plaintiff (age 67

at the time in question) was demoted with eight other inmates, five of whom *were in*

*their 30s*.  Not one of the other demoted inmates was over 55.  Inmate Long was

approximately 50 years old, Inmate Phillips was approximately 54, and Inmate Wilson

was approximately 47.  Thus, of the nine inmates negatively impacted by this decision,

eight were *under* age 55.  In light of these facts, a reasonable jury could not find that the

demotion was a result of age discrimination.  Plaintiff has not submitted any evidence

that younger employees were treated *differently* (or more favorably) than he.

As explained above, Long has articulated a non-discriminatory reason for the

employment decision, and Plaintiff has not rebutted that explanation with credible

evidence.   As to the demotion from Grade 1 to Grade 2, Plaintiff has failed to submit

sufficient evidence of purposeful discrimination based on race or age, and he has failed

to offer any evidence that a similarly situated individual outside the protected class (a

younger, white inmate) was treated more favorably than he.  Plaintiff was reclassified

---

[5]      In his summary judgment response and in several of his requests
for an administrative remedy, Plaintiff asserts that the prison's conduct
also violates the Fair Labor Standards Act (FLSA), 29 U.S.C. 201, et seq.
The Court's threshold review Order did not construe this as a viable
claim, and Plaintiff never sought leave to amend his complaint to include
it.   Regardless, prisoners have no right to be compensated for their work
and are not "employees" for the purpose of FLSA. ***Woodall v. Partilla*,
581 F. Supp. 1066, 1077-78 (N.D. Ill. 1984) (collecting cases)**.  Therefore,
Plaintiff could not bring claims pursuant to the FLSA, and any arguments
based on it are irrelevant.

and downgraded along with all other inmates in the same position, including younger, non-Hispanic inmates.  No genuine issues of material fact remain, and Defendant is entitled to judgment as a matter of law as to the race and age discrimination claims (Count 1 of the complaint).

■   **COUNT 2 – RETALIATION BASED ON SEEKING AN ADMINISTRATIVE REMEDY**

Plaintiff also alleges that his March 2011 lay-off from his UNICOR job was Defendant Long's act of retaliation for Plaintiff pursuing administrative remedies (filing a grievance) regarding his downgrade in pay.  An inmate has a constitutional right to file a grievance as part of his right of access to the courts.  *DeWalt v. Carter*, **224 F.3d 607, 618 (7th Cir. 2000)**.  More specifically, a "prisoner has a First Amendment right to make grievances about conditions of confinement."  *Gomez v. Randle,* **680 F.3d 859, 866 (7th Cir. 2012),** *citing Watkins v. Kasper,* **599 F.3d 791, 798 (7th Cir. 2010).**

Retaliating against an inmate for filing grievances violates the First Amendment right to petition for the redress of grievances.  *See, e.g., Dobbey v. Illinois Dept. of Corrections,* **574 F.3d 443, 446 (7th Cir. 2009).**  Retaliatory official action violates the Constitution, even if the officer would be otherwise authorized to take that action in the absence of a retaliatory motive. *Zimmerman v. Tribble,* **226 F.3d 568, 573 (7th Cir. 2000)**.

To establish a prima facie case of retaliation, the prisoner plaintiff must show that his protected activity was "at least a motivating factor" in the retaliatory action taken against him. *Mays v. Springborn,* **719 F.3d 631, 635 (7th Cir. 2013).**[6]

---

[6]    *Accord Gomez,* **680 F.3d at 866 (to prevail on a First Amendment retaliation claim, a prisoner must show that he engaged in activity**

If the plaintiff makes this showing, the burden then shifts to the defendant to show that he would have taken the same action anyway. *Id.* Stated another way, the defendant can rebut the plaintiff's prima facie case by showing that his conduct was not a necessary condition of the harm, i.e. "the harm would have occurred anyway." *Mays,* **719 F.3d at 634,** *citing Mt. Healthy Board of Education v. Doyle,* **429 U.S. 274 (1977)**. *See also Babcock v. White,* **102 F.3d 267, 275 (7th Cir. 1996)**.

Here, Plaintiff has not shown that his First Amendment activity (pursuing administrative remedies following his downgrade in pay) was a "motivating factor" in Defendant's lay-off decision. And even if Plaintiff had made that prima facie showing, Defendant has rebutted it by demonstrating that the "harm" (the lay-off from the UNICOR job) would have occurred anyway, due to the lack of factory work.

Plaintiff alleges that he was terminated from UNICOR when he filed a request for an administrative remedy regarding his demotion to Grade 2. Of the grievances submitted by Plaintiff, one of them addresses the initial demotion. That grievance was initiated November 12, 2010. At that time, no action was taken against Plaintiff. His position was eliminated around the time that he appealed the initial denial of his grievance in late January 2011. However, this is insufficient evidence of retaliation.

First, Plaintiff submitted evidence that he used the administrative review process to successfully contest a reassignment to Grade 2 in 2009. No retaliation resulted from

---

protected by the First Amendment, he suffered a deprivation that would likely deter such activity in the future, and his protected activity was "at least a motivating factor" in defendant's decision to take the retaliatory action).

this process.  Plaintiff was reinstated and awarded back pay.   Yet Plaintiff claims that one year later, the grievance process had become corrupted.  Second, although there may be suspicious timing between Plaintiff's appeal and Long laying Plaintiff in, Plaintiff was offered another UNICOR position *within one month*.  When Plaintiff was laid-in from that position, he was again offered another position.  Plaintiff declined that position.  Plaintiff asserts that he turned down that position for medical reasons and that he was " unable . . . to work at UNICOR or anywhere else" (Doc. 58-1, p. 7).

Plaintiff's unemployment as of March 28, 2011 could not have been retaliatory, as Plaintiff himself points to a non-retaliatory reason why he was not working at that time. Plaintiff was terminated approximately two weeks later.  Retaliation is not a reasonable inference here, because the evidence shows that Plaintiff was retained in his Level 2 position for several months *after* initiating administrative review, and he was offered two different positions when that job was eliminated.  No reasonable jury could find retaliation on this record.

Moreover, Defendant Long has submitted evidence plainly showing that the demotion and eventual lay-off experienced by Plaintiff were due to the factory losing work.  The evidence before the Court establishes that *all* inmates were terminated in the fall of 2011, because there was no more work at the factory.  Plaintiff has not rebutted this assertion, other than to offer his own speculative testimony that UNICOR would re-open the factory once all of the workers with longevity had been terminated.  There is no evidence that the factory at Greenville has been re-opened.

One other point merits mention. Plaintiff has countered Defendant's summary judgment motion (which characterized Plaintiff as a below-average employee) with evaluations in which he received favorable marks. However, Plaintiff's performance was not the proffered reason for his demotion or lay-off, so this evidence is of minimal relevance.

### F. Conclusion

No genuine issue of material fact remains, and Defendant is entitled to judgment as a matter of law on both counts of Plaintiff's complaint. For all these reasons, the Court **GRANTS** Defendant's motion for summary judgment (Doc. 56).

David Brinkley filed a Motion for Leave to Appear as Amicus Curiae and Motion to Intervene (Doc. 61). Brinkley and Plaintiff have presented the arguments they have made in this motion before; and the Court finds no reason to disturb its prior ruling. For the reasons articulated in the Order at Doc. 38, Brinkley's motion to appear and intervene (Doc. 61) is **DENIED**.

The grant of summary judgment in favor of Defendant **RENDERS MOOT** Plaintiff's September 22, 2014 motion to summon witnesses (Doc. 62). The Clerk of the Court **SHALL ENTER JUDGMENT** in favor of Defendant Long and against Plaintiff. The Clerk shall close the case.

IT IS SO ORDERED.

DATED September 24, 2014.

s/*Michael J. Reagan*

Michael J. Reagan
United States District Judge